# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **JEFF BUSTER,** ) | Case No.  1:09 CV 1953 |
| ) | |
| Plaintiff, ) | Judge Dan Aaron Polster |
| ) | |
| vs. ) | **MEMORANDUM OF OPINION** |
| ) | **AND ORDER** |
| **CITY OF CLEVELAND, et al.,** ) | |
| ) | |
| Defendants. ) | |

Before the Court is the Motion for Summary Judgment filed by Defendants Officer Michael Herrin, Officer Michael Veltre, and Sergeant Pamela Resse.  (**ECF No.  52**).  For the reasons discussed, *infra*, Defendants' Motion is hereby  **GRANTED IN PART** and **DENIED IN PART**.

## I.  BACKGROUND

The following are the facts as presented at the parties' depositions and as alleged in Plaintiff's Amended Complaint.  On the afternoon of August 22, 2007, Jeff Buster was arrested while taking photographs on the first floor lobby of Cleveland City Hall by Cleveland Police Officers Veltre and Herrin.  Buster had accompanied a friend to City Hall, but was forced to wait in the lobby area when he could not produce photo identification to security personnel when requested.  While waiting, Buster began taking pictures of the security area.  Officer Veltre approached Buster and told him that he was not permitted to take photos of the security area. Officer Veltre testified at his deposition that he believed this to be suspicious behavior and that he asked Buster to leave the building three times.  When Buster refused to leave, Officer Veltre

informed Buster that he was under arrest for disorderly conduct.[1]

Buster testified at his deposition that Officer Veltre then "dragged" him through the security area into the interior lobby area and asked the security guard to call for back-up. Buster states that as he was being led from the lobby, the strap on his sandal broke, causing the sandal to drag along behind his foot and making it difficult for him to walk. Upon arriving in the lobby, Officer Herrin saw Officer Veltre holding Buster by his arm, attempting to get it around his back, and heard Buster complaining about his sandal. Officer Herrin assisted Officer Veltre and handcuffed Buster with his hands behind his back. Neither officer checked the tightness of the cuffs.

Officers Herrin and Veltre each then took Buster by an arm and, according to Buster, "dragged" him backwards toward a nearby stairwell, turned him around, and then took him forcefully by the arms down the stairs to the booking area in the basement of City Hall. Buster asserts that Officer Herrin made the handcuffs excessively tight and did not double-lock the cuffs to prevent them from tightening further. He claims the steel edge of the handcuffs cut into his wrists and drew blood.

Meanwhile, Buster requested permission to fix his shoe and retrieve his camera lens cover that he had dropped, but his request was denied. Buster alleges that the defective footwear made it difficult for him to navigate the stairs. Sergeant Reese stated she arrived while Buster was being "escorted" down the stairs. She says that she saw the officers help Buster adjust his sandal on the staircase. Buster admits that somehow his shoe got back on his foot, but that he

---

[1] A criminal complaint was subsequently filed against Buster in the Cleveland Municipal Court. Buster was charged with four offenses: obstruction of official business, resisting arrest, aggravated disorderly conduct, and criminal trespass. Buster was tried on the charges in December 2007 and was acquitted.

does not recall how or when it came to be there.

Once inside the police room, the officers seated Buster at a desk. Officer Herrin departed, leaving Buster under the supervision of Officer Veltre and Sergeant Reese. Officer Veltre sat at the desk across from Buster and began completing his police report. Buster alleges that he remained seated at the desk in the City Hall basement police booking room for approximately one to two hours.

During this time, Buster says he felt sharp pains in both of his wrists. He alleges that he asked Officer Veltre and Sergeant Reese to loosen his handcuffs. He asserts that Officer Veltre said nothing, and that Sergeant Reese refused to loosen his cuffs, saying that his handcuffs would come off when he was transferred to the city jail. Buster admitted that this was the one and only time he asked to have his cuffs adjusted.

Both Officer Veltre and Sergeant Reese deny that Buster ever complained of pain or asked for his cuffs to be loosened or otherwise complained that the cuffs were too tight. Sergeant Reese asserts that Buster's handcuffs were removed when two additional officers arrived to transport Buster to the city jail. She said that Buster was re-cuffed by the responding officers, and that Officer Herrin's cuffs were eventually returned to him. She did not inspect Officer Herrin's handcuffs closely, but does not recall there being any blood on the handcuffs. Buster denies that the transporting officers switched his cuffs before taking him to the jail. Buster alleges that his cuffs were not removed until he reached the Justice Center and was placed in a cell.

While in a cell at the jail, Buster examined his wrists and saw a cut on the back of his left hand near his wrist and redness on his right wrist. Buster asserts that the cut had begun bleeding

-3-

when he was sitting at the desk in the City Hall booking room and that it did not stop bleeding until the cuffs were removed.

Buster was held at the Justice Center until the early morning hours of August 23, 2007, when he was then transferred to the Second District Cleveland Police station.  During the transfer, Buster was handcuffed to another prisoner.  He testified that he did not receive any injuries from that handcuffing.

Buster posted bond and was released from the Second District on the afternoon of August 23, 2007.  At that time, his camera was returned to him.  Shortly thereafter, just outside the building, Buster's wife, Martha Eakin, photographed the back of Buster's shirt and the wound on the back of his left hand, near his wrist.  Buster did not receive or request any medical treatment while in custody, nor did he seek medical attention for his injuries at any time thereafter.

On August 19, 2009, Buster filed the above-captioned action under 42 U.S.C. §§ 1983, 1985, and 1988 against the aforementioned police officers, the City of Cleveland, and various city departments and employees thereof.  The only claim that survived a previous motion to dismiss is the third cause of action against Officers Herrin, Veltre and Sergeant Reese for excessive force in handcuffing Plaintiff Jeff Buster.  (See ECF No. 26.)

On March 1, 2011, Defendants filed the instant Motion for Summary Judgment on the basis of qualified immunity.  The Court has reviewed the Motion, Plaintiff Jeff Buster's opposition brief (ECF No. 53), Defendants' Reply (ECF No. 58) and the entire record, and concludes, for the reasons that follow, that the Motion must be granted in part and denied in part.  Specifically, the Court grants the Motion as to Plaintiff's excessive force claim against Officer Herrin and denies the Motion as to Plaintiff's excessive force claim against Officers Veltre and

Sergeant Reese.

## II. STANDARD OF REVIEW

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). All facts and inferences drawn therefrom must be viewed in a light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 403 (6th Cir. 1997). If, after reviewing the record as a whole, a rational factfinder could not find for the nonmoving party, summary judgment is appropriate since there is no genuine issue of material fact for determination at trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. ANALYSIS

Defendants move for summary judgment on the ground that they have qualified immunity against all claims. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The standard is one of objective reasonableness, analyzing claims of immunity on a fact-specific, case-by-case basis to determine whether a reasonable official in the defendant['s] position could have believed that his conduct was lawful, in light of clearly established law and the information he possessed." *Pray v. Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995).

In assessing qualified immunity, the court, viewing the facts in the light most favorable to

the plaintiff, determines whether: (1) the violation of a constitutional right has occurred; and (2) the constitutional right at issue "was clearly established at the time of defendant's alleged misconduct." *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Dunigan v. Noble*, 390 F.3d 486, 491 (6th Cir. 2004).

In opposition Defendants' motion, Buster claims that Officer Veltre, Officer Herrin and Sergeant Reese violated his Fourth Amendment right to be free from unreasonable seizures when the officers: (1) used very sharp edged handcuffs in cuffing him; (2) did not double-lock his handcuffs; (3) failed to test the fit of his handcuffs;(4) excessively tightened the handcuffs when arresting him, alternately pulled him backward by one or the other of his arms causing the steel edges of the cuffs to cut both of his wrists and bloody his shirttails; (5) refused to reposition his sandal making it difficult for him to walk; (6) refused to loosen his handcuffs when he complained of tightness and pain; and (7) failed to routinely sterilize or clean the handcuffs, thus exposing him to the threat of communicable diseases.

Defendants argue they are entitled to qualified immunity because they did not violate any of Buster's constitutional rights. Specifically, they assert that he never complained that the cuffs were too tight, and that he suffered too minor of an injury to sustain an excessive force claim for unduly tight handcuffing. Defendants' motion does not address the sanitation of handcuffs.

**A.     Unduly Tight Handcuffing**

Officers are entitled to handcuff arrestees, and the Sixth Circuit has made clear that simply handcuffing an arrestee in the course of an otherwise lawful arrest does not constitute excessive force. *Neague v. Cynar*, 258 F.3d 504, 508 (6th Cir. 2001). There is no present

contention that Buster's arrest was unlawful;[2] therefore no constitutional claim can arise merely from the fact that Buster was handcuffed. On the other hand, it is clearly established that too-tight handcuffing can constitute excessive force. *Lyons v. City of Xenia*, 417 F.3d 565, 575 (6th Cir. 2005); *Burchett v. Kiefer*, 310 F.3d 937, 944-45 (6th Cir. 2002).

"The Fourth Amendment prohibits unduly tight or excessively forceful handcuffing during the course of a seizure." *Morrison v. Bd. of Trustees of Green Tp.*, 583 F.3d 394, 401 (6th Cir. 2009) (citation omitted). "In order for a handcuffing claim to survive summary judgment, a plaintiff must offer sufficient evidence to create a genuine issue of material fact that: (1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced "some physical injury" resulting from the handcuffing." *Id*. The Sixth Circuit has held that "a plaintiff must demonstrate that he complained to the officers and that his complaints were ignored. In the absence of a complaint to the officer, no constitutional violation can be said to have occurred." *Pigram ex rel. Pigram v. Chaudoin*, 199 F. App'x. 509, 514 (6th Cir. 2006 ) (citing *Lyons*, 417 F.3d at 576).

**1.    Officer Herrin**

Officer Herrin is entitled to dismissal because he did not hear any complaints by Buster. Buster testified that the only time he complained about the handcuffs being overly tight was to Officer Veltre and Sergeant Reese, and that Officer Herrin had already left the room at that time. An officer cannot ignore that which he can not possibly hear. There is nothing in the record to indicate that Buster ever told Herrin that his handcuffs were too tight. Therefore, unless there is

---

[2] Buster's claim for unreasonable arrest (Count II, Amend. Compl.) was dismissed following briefiing of Defendants Motion to Dismiss (ECF.Nos.: 20, 23, 25). (See ECF No. 26, at 10-11).

evidence that there was an "obvious physical problem caused by the handcuffs," i.e., that Officer Herrin was on notice that the handcuffs were too tight, even in the absence of an express complaint from Buster, no reasonable juror could find that Officer Herrin had notice of the cuffs being too tight. *Lyons*, 417 F.3d at 576.

Here, there is no evidence indicating that Officer Herrin should have been on notice of an obvious physical problem caused by the handcuffs. Buster has offered pictures showing blood stains on the back of his shirt. He testified that the blood got on his shirt while he was seated at the desk in the booking room in the basement of City Hall. Buster and all of the Defendants testified that Officer Herrin left the room within moments of assisting Officer Veltre, therefore he could not have had any opportunity to see that Buster was bleeding or to have seen the blood stains on his shirt. This evidence does not demonstrate that Buster had an obvious physical problem prior to the time that he was seated at the desk. Thus, a reasonable juror could not conclude that Buster had an obvious physical problem caused by the cuffs while in the presence of Officer Herrin.

Because the facts as alleged by Buster do not rise to the level of unconstitutionally excessive force, the Court hereby grants summary judgment to Defendant Herrin on the grounds of qualified immunity as to the excessive-force handcuffing claim.

**2.      Officer Veltre and Sergeant Reese**

The remaining Defendants argue that the evidence does not support that Buster's handcuffs were unduly tight, that he complained to either Veltre or Reese, or that he sustained an injury as a result. Defendants take issue with the photographic evidence. Defendants assert that the photos show a cut on Buster's hand, not his wrist, and that Buster fails to provide definitive

proof that the cut and blood stains were from excessively tight handcuffs and not some other source. Moreover, they argue that Buster's injury was *de minimus* and thus insufficient to support a claim for excessively tight handcuffs. Defendants deny that Buster ever complained and assert that a reasonable officer would have concluded that he was complaining about the arrest, not that the cuffs were too tight.

Buster presents sufficient evidence to establish a claim of excessive force based on overly tight handcuffing against Officer Veltre and Sergeant Reese. Although Defendants deny that Plaintiff's handcuffs were too tight or that he complained, the Court must accept Plaintiff's direct evidence as true. *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994).

Buster's testimony alone is sufficient to create a jury question as to whether the handcuffs were overly tight and whether he complained and was ignored. Buster testified that Officers Veltre and Herrin did not double lock his handcuffs, which caused them to excessively tighten when they alternately pulled him backward by one or the other of his arms. He testified that his sandal came undone while the officers were escorting him through the lobby, that they denied his request to fix his sandal causing him to stumble, and that they basically dragged him down a flight of stairs to the basement where he remained handcuffed in the same manner. Buster testified he complained about the handcuffs to Sergeant Reese and Officer Veltre. He testified that Sergeant Reese denied his request to adjust the handcuffs, stating, "your handcuffs will be removed at the jail." Buster also testified that Officer Veltre, who was seated just across the desk from him, did not respond at all to his request.

As to the injury prong, "the cases in this circuit provide that a plaintiff does not need to show substantial injuries to get to the jury on an unlawful force case." *Osak v. Roseville Police*

*Officer Judson Badge No. 245*, No. 2:07-cv-15402, 2009 WL 1868397, at *3 (E.D. Mich. June 25, 2009) (citing *Ingram v. City of Columbus*, 185 F.3d 579, 597 (6th Cir.1999); *Holmes v. City of Massilon*, 78 F.3d 1041, 1048 (6th Cir. 1996)).  Buster testified that he felt pain in both of his wrists and suffered a cut and bleeding on or near his left wrist that bloodied his shirttails.  Buster submits photographs showing a cut on the back of his left hand, near his wrist and blood stains on his shirttails, purportedly from the handcuffs.  Buster's evidence is sufficient to create a genuine issue of material fact with regard to the injury prong.  *Morrison v.  Bd.  Of Trs. of Green Twp*, 583 F.3d 394, 402-03 (6th Cir. 2009) (holding that allegations of bruising, skin marks, or bleeding can support an excessive use of force claim based on handcuffing) (citing *Baskin v. Smith*, 50 Fed. Appx. 731, 737-38 (6th Cir. 2002)).

On the facts alleged by Plaintiff, Defendants Veltre and Reese are not entitled to qualified immunity or summary judgment on Plaintiff's claim of  excessive force based on unduly tight handcuffing.  Accordingly, Defendants' motion is denied.

**B.     Handcuff Maintenance**

The affirmative defense of qualified immunity shields the Defendants from personal liability on Buster's claim that their failure to sanitize the handcuffs exposed him to the threat of communicable disease, such as hepatitis or HIV.  Defendants are immune from personal liability unless their actions violated constitutional rights, which were "sufficiently clear that a reasonable official would understand that what he [was] doing violate[d] [those] right[s]." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987).

The Sixth Circuit has held that :

> pretrial detainees held in the jail are protected under the Fourteenth Amendment, which provides that "a detainee may not be punished prior to an adjudication of guilt

> in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979). This Court has made clear that such detainees are thus entitled to the same Eighth Amendment rights as other inmates. *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir.1985). In addition, conditions of pretrial detention that implicate only the protection against deprivation of liberty without the due process of law, and no other express guarantee of the Constitution, are constitutional if they do not "amount to punishment of the detainee." *Bell*, 441 U.S. at 535, 99 S.Ct. at 1872. Absent a showing of an expressed intent to punish on the part of jail officials, if such a condition or restriction of pretrial detention "is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.' " Id. at 538-39, 99 S.Ct. at 1874.

*Thompson v. County of Medina*, 29 F.3d 238, 242 (6th Cir. 1994). Unnecessary and involuntary exposure of a pre-trial detainee to a serious disease may constitute a violation of a pre-trial detainee's constitutional rights. *See, e.g. Helling v. McKinney*, 113 S. Ct. 2475, 2480 (1993) (holding that Eighth Amendment protection against deliberate indifference to prison health problems extends to conditions that threaten to cause health problems in future, as well as current serious health problems). However, even assuming that Buster's rights were violated in this case, the Court is unable to find that the individual defendants reasonably should have known that their actions violated Buster's right to be free from exposure to communicable diseases. Buster has not cited, and the Court has not found, a single decision establishing that an arrestee has a constitutional right to sanitized handcuffs in the course of an arrest. Because there is no such right, let alone a clearly established right, Buster can show no constitutional violation. *Saucier*, 533 U.S. at 201; *Dunigan*, 390 F.3d at 491. Accordingly, Officer Veltre and Sergeant Reese are entitled to qualified immunity and this claim must be dismissed.

## IV. CONCLUSION

For the reasons discussed, *supra*, Defendants' Motion for Summary Judgment

(**ECF No. 52**) is hereby **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's claims against Officer Herrin are dismissed with prejudice. Further, Plaintiff's claim that Defendants' failure to sanitize their handcuffs violated his constitutional rights is hereby dismissed with prejudice against all Defendants.

    **IT IS SO ORDERED.**

    */s/ Dan A. Polster   April 26, 2011*
**Dan Aaron Polster**
**United States District Judge**